## 52351. M. SHAPIRO & SONS, INC. et al. v. YATES CONSTRUCTION COMPANY OF THE SOUTHEAST.

CLARK, Judge.

Where a statutory bond is provided to release realty from a recorded lien, is it incumbent upon the lienor in suing the principal and surety on the security to prove entitlement to the lien? Our answer is in the affirmative.

Community Building Corp. of Atlanta contracted with the owner of realty in Gwinnett County to build a sewer plant and outfall sewers. C.B.C. engaged Yates Construction Co. as a subcontractor on the project. Contractual disputes developed between the owner and the general contractor. When Yates was not paid by C.B.C. it recorded a laborer's lien in the amount of $64,315. M. Shapiro & Sons, Inc. had been retained by the realty owner to complete the work under C.B.C.'s contract after the original contract was terminated. On March 27,

1975 Shapiro as principal with St. Paul Fire & Marine Ins. Co. as surety filed a bond with the Clerk of the Superior Court of Gwinnett County to release the property from the lien in conformance with Code Ann. § 67-2004.

The instant suit was filed by Yates against Shapiro and St. Paul to recover on the bond. Yates thereafter obtained a consent judgment for the amount of its claim against C.B.C.

The answer of defendants Shapiro and St. Paul in the present action presented a general denial and also asserted six affirmative defenses, viz., failure to state a claim; improper venue; full payment of the contract price to C.B.C by the owner; statute of limitation on the filing of the lien and the action against C.B.C.; waiver, based on paragraph 17 of the C.B.C.-Yates contract; and the right to set off liquidated damages claimed to be due from Yates by virtue of paragraph 3.4 of the C.B.C.-Yates contract.

Asserting that it had fulfilled the requisite under the bond of obtaining a judgment against C.B.C., its general contractor, Yates moved for a summary judgment. Shapiro and its surety argued that judgment should not be granted because the affirmative defenses had not been pierced. The trial court granted the summary judgment and this appeal followed. *Held:*

What was the intent of the General Assembly in enacting the statute now contained in Code Ann. § 64-2004?

"In all interpretations, the court shall look diligently for the intention of the General Assembly, keeping in view, at all times, the old law, the evil, and the remedy." Code § 102-102 (9). Until 1953 an owner of realty was subjected to situations where suppliers of material or labor for improvement of realty could plague the owner by recording claims of lien which might be legally unauthorized or excessive as to amount. This would stymie an owner who wished to sell his property or convey it to secure a loan. He had no quick remedy excepting to proceed into equity for cancellation. This was not only expensive litigation but could be drawn out by a recalcitrant adversary. Similarly, general contractors could be embarrassed by dissatisfied sub-contractors or

unhappy laborers filing unwarranted liens against the property of the owner with whom they had contracted.

To correct this evil, the 1953 General Assembly enacted Code § 67-2004 permitting either the owner or his contractor "before or after foreclosure proceedings are instituted" to file a bond and thereby discharge the realty from the lien. In 1972 this statute was amended so as to provide expressly that if property was posted as a bond that inter alia "So long as the bond exists it shall constitute a lien against the property" given as security for the discharge of the original lien.

Those portions of the two statutes make clear that the intent of the legislature was to have the bond serve as a replacement for the lien—and not to establish a new and different procedure limited to the bond. Certainly, in doing so, the legislature did not intend to deprive the owner or contractor of those defenses which would have been available to defeat foreclosure of the lien. In short, the intention was to have the bond as a security to stand in the place of the lien so that the lienor still had to show a compliance with the lien law and the lienee could in a suit on the bond use as defenses those which would have been available to a lien foreclosure.

Obviously, it was not the intention of the General Assembly to cause an owner or his contractor to be deprived of legal defenses if they had been in a position to sweat out the twelve-month period that is the alternative to posting a bond if the lienor takes no enforcement action during the statute's allotted time. Clearly, for instance, a lienor suing on the bond would have to establish his rights to a lien including filing within the 90-day period and suing within the statutory twelve-months time.

That is the meaning of the cases decided by this court. Thus *Pickett v. Chamblee Const. Co.,* 124 Ga. App. 769, 774 (8) (186 SE2d 123), said "The bond substitutes for the lien on the realty. . ." Judge Eberhardt cited that case in *Vector Co. v. Star Enterprises,* 131 Ga. App. 569, 571 (206 SE2d 636) and said that "the lien, being discharged, could no longer be foreclosed against the real estate or the owners, though the supplier of the materials has a remedy against the bond." He prefaced his statement on this foundation: "When the bond to discharge the lien under

Code Ann. § 67-2004 was filed and recorded the bond was substituted for the lien (*Pickett v. Chamblee Construction Co.,* [supra]). . ."His use of the word "substitute" was in the thesaurus meaning: "put in the place of, change for; make way for, give place to; supply [or] take the place of; supplant, superseded, cut out, serve as a substitute; step into [or] stand in the shoes of." (Roget's Thesaurus (Rev. Am. Ed. 1947) p. 48). Therefore, Judge Eberhardt could not have intended by his language to have deprived the owner or general contractor of defenses which would have been available if they had been able to await a foreclosure.

The posting of the bond is analogous to the situation where sales take place under court order with the proviso that the funds "shall stand in lieu of the real estate." See *Parker v. Cherokee Bldg. Supply Co.,* 207 Ga. 710 (64 SE2d 51). Actions may not then be taken against the realty but this does not banish defenses that would be available if the action had been in rem.

It is submitted that the language in the first division of *Montgomery v. Richards Bldg. Materials, Inc.,* 122 Ga. App. 472 (177 SE2d 507) is squarely in line with this case where Yates obtained a judgment by consent in a separate suit against Community Building Corp. There, this court noted that on a similar discharge bond filed by the owner that a judgment against the general contractor did not make the principal (owner) and surety liable "in the absence of a judgment in favor of the materialman and against the owners *establishing the right to a lien.*" (Emphasis supplied.) In short, to enforce the bond the lienor must establish his rights both to a lien and foreclosure thereof upon the recorded lien which the bond replaced — and the owner or general contractor may present as defenses those which would be available to a foreclosure of the lien for which the bond was substituted.

In brief, we hold that the intent of the bond statute was to provide a procedure whereby owners could alienate their property while disputes regarding claims of liens are pending; that the bond "stands in the shoes of" the lien to serve as security after the lien claimant has proved entitlement to the lien; and that the principal and surety under this statutory bond is entitled to present any defenses to an action on the bond that would exist if the

lien for which the bond served as a substitute were being foreclosed, whether the principal be the owner or the contractor.

*Judgment reversed. Bell, C. J., Deen, P. J., Quillian, P. J., Webb and McMurray, JJ., concur. Smith, J., concurs specially. Stolz and Marshall, JJ., dissent.*

ARGUED JULY 12, 1976 — DECIDED NOVEMBER 18, 1976 — REHEARING DENIED DECEMBER 8, 1976 —

*Sutherland, Asbill & Brennan, Charles T. Lester, Jr.,* for appellants.

*Hurt, Richardson, Garner & Todd, Sam E. Thomas, Robert B. Wedge,* for appellee.

SMITH, Judge, concurring specially.

I concur in Judge Clark's opinion but do not agree to his premise that the bond served as a *substitute for the lien.* My view is it is a substitute for the real estate as was expressly stated in *United Bonding Ins. Co. v. Good-Wynn Elec. Supply Co.,* 124 Ga. App. 545 (2) (184 SE2d 508) in which the contractor had executed the bond together with the surety, and in which it was said, "In the case sub judice the general contractor and its surety substituted themselves *in place of the realty."* (Emphasis supplied.) This case was cited in *Pickett v. Chamblee Const. Co.,* 124 Ga. App. 769, 774 (8) (186 SE2d 123) as authority for the statement "[t]he bond substitutes *for the lien on the realty* . . ." (Emphasis supplied.) And, subsequently, the latter case was cited in *Vector Co. v. Star Enterprises,* 131 Ga. App. 569, 571 (206 SE2d 636) in support of the statement that "[w]hen the bond to discharge the lien under Code Ann. § 67-2004 was filed and recorded the bond was *substituted* for the lien . . ." (Emphasis supplied.) This was quite a transition, and in my opinion the substitution for the realty which is correct is quite different from a substitution for the lien (which is erroneous). This particular ruling in the latter two cases should be expressly disapproved as not being supported by the authority originally cited. In *United Bonding Ins. Co. v.*

*Good-Wynn Elec. Supply Co.,* 124 Ga. App. 545, supra, this court, after holding in Division 1 that the right to a lien had been established and after stating in Division 2 that the bond was substituted for the realty made the further following statement: "They [referring to the general contractor and surety who executed the bond] are now the security for the debt. The debt itself does not depend upon the nicety of whether the material was or was not finally incorporated into the improvement. The debt exists if materials were furnished and not paid for. The debt has been proven and is not disputed." The ultimate result reached was correct, that is that the lien having been established, and the debt against the contractor established, the surety was bound for the amount of that debt; however, that case was in error in saying that the surety on the bond was also surety for the debt. Indirectly he was, once the lien and debt were established, but the surety on the bond was not a direct surety for the debt. This latter statement in this case so suggesting should be expressly disapproved, although the result reached was correct. The prior decision of this court in *Montgomery v. Richards Bldg. Materials, Inc.,* 122 Ga. App. 472 (177 SE2d 507) is controlling here.

The bondsmen may set up any defense *against the lien,* whether he be the owner or the contractor.

STOLZ, Judge, dissenting.

The majority has mistakenly applied the lien application to a situation where the owner files a bond to release the property from a materialman's lien, to the situation presented here where the bond is filed by the contractor. The two situations have different results, as shall be seen.

Absent any contrary showing, it must be assumed that Shapiro was, as it alleged in its bond, "the contractor employed to improve [the owner's] property," so as to be a proper party to file the bond to discharge Yates' lien.

"When the bond to discharge the lien under Code Ann. § 67-2004 [Ga. L. 1953, p. 544; 1972, p. 469] was filed and recorded the bond was substituted for the lien (*Pickett v. Chamblee Construction Co.,* 124 Ga. App. 769 (8) (186 SE2d 123)), and the lien, being discharged, could no

longer be foreclosed against the real estate or the owners, though the supplier of materials has a remedy against the bond." *Vector Co. v. Star Enterprises,* 131 Ga. App. 569, 571 (206 SE2d 636).

Hence, since the lien could no longer be foreclosed, it was not necessary, as the appellants contend, for the materialman, Yates, to prove that it is entitled to a lien as a condition precedent to recovery on the bond. The defenses filed by the appellants to the appellee's action on the bond, properly could be made not by the defendants, but by the owner. "A materialman who has provided labor on the owner's premises and duly recorded his lien is entitled to foreclose, subject to certain defenses *on the part of the owner, . . .*" (Emphasis supplied.) *Melton v. Lowe,* 117 Ga. App. 783, 784 (161 SE2d 912).

I agree with the majority that the legislative intent was to have the bond serve as a replacement for the lien. *Vector Co. v. Star Enterprises,* supra. My disagreement with the majority is in the fact that I am of the opinion that there is a difference as to treatment between the owner and the contractor dependent upon who files the bond. There is a different effect when a *contractor* files the bond and when the *owner* files it. The materialman's lien is foreclosed "subject to certain defenses *on the part of the owner,*" as we indicated in *Melton v. Lowe,* supra. Thus, if the *owner* files the bond, he is entitled to raise such defenses to the materialman's action thereon as he could raise to the foreclosing of the lien.

When the contractor files the bond, however, as is the case here, these defenses are not relevant *at that point in time.* Although one of the purposes of this bond is to protect the owners, and allow them to alienate their property, surely another purpose must be to protect the interest of the materialman and allow him to recover *from the contractor* what he has spent on the job. After the contractor has paid the materialman (either in cash or by the bond), then the contractor can go against the owner to recover the payment. At this point the owner could assert any defenses he has. Of course, when the owner himself posts the bond, he can file any defenses he may have directly to the materialman's action on the bond.

In the case sub judice, *the materialman had already*

*obtained a consent judgment against the contractor, which established his right of recovery from the contractor.* If the *owner* has a defense or defenses, he can raise it when the contractor seeks to recover from the owner. In the case of *Montgomery,* cited by the majority, the bond was filed by the *owner,* not the general contractor, as is the situation in our case. Where the *owner* filed the bond, the right to a lien was relevant, since the owner can assert defenses thereto (*Melton v. Lowe,* supra). Where the *contractor* files the bond (as here), however, the contractor can not raise defenses which must be raised *by the owner.*

Absent any showing that the owner was aware of the contract between the contractor, C.B.C., and the subcontractor-materialman, Yates, or that it had acted to its injury in reliance thereon, or that C.B.C. was acting as the agent of the owner, the owner was not bound by the contract between C.B.C. and Yates. *Mass. Bonding &c. Co. v. Realty Trust Co.,* 142 Ga. 499 (4) (83 SE 210). The plaintiff materialman complied with all of the conditions precedent to recovery on the bond.

The trial court correctly granted Yates' motion for summary judgment and I respectfully dissent.

I am authorized to state that Judge Marshall joins in this dissent.